# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOPE BECK, | CIVIL ACTION NO. 1:16-CV-1975 |
| Plaintiff | (Chief Judge Conner) |
| v. | |
| HONEY LOCUST FARMS, LLC and THOMAS BROSS IV, | |
| Defendants | |

## MEMORANDUM

Before the court is the motion (Doc. 16) by plaintiff Hope Beck ("Beck") for approval of the settlement agreement between Beck and defendants Honey Locust Farms, LLC ("Honey Locust Farms") and Thomas Bross IV ("Bross"). The parties seek to resolve Beck's claims against defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. STAT. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Act ("PWPCA"), 43 PA. STAT. ANN. § 260.1 *et seq.* For the reasons that follow, the court will grant the motion in part and deny it in part.

## I. Factual Background & Procedural History

Honey Locust Farms employed Beck from approximately May 2013 through July 2016. (See Doc. 1 ¶¶ 1, 16). At all times relevant, Bross was a manager or chief executive officer for Honey Locust Farms, a limited liability company located in Berlin, PA. (Doc. 1 ¶¶ 2-3; Doc. 5 ¶¶ 2-3). Beck avers that she received an hourly wage of $31.88 per hour from May 2013 to May 2014, $36.63 per hour from May 2014 to December 2014, and $39.38 per hour from December 2014 until her termination

in July 2016. (Doc. 1 ¶¶ 6, 16). During her employment, Beck claims she routinely worked 50-hour work weeks but only received compensation for 40 hours per week. (Id. ¶¶ 7-8). Beck estimates her unpaid overtime between May 2013 and July 2016 was approximately 1,245 hours. (Id. ¶ 16). She calculates the total overtime pay owed to her at $44,780.60. (Id.) Defendants deny Beck's allegations. (Doc. 5 ¶¶ 6-8, 16).

Beck commenced this action by filing a three-count complaint on September 28, 2016, asserting claims for violation of the FLSA, the PMWA, and the PWPCA. (Doc. 1). Defendants filed an answer (Doc. 5) denying each of Beck's claims. On September 19, 2017, Beck filed the instant motion (Doc. 16) for judicial approval of the parties' settlement.

## II. Legal Standard

Congress enacted the FLSA for the purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). The statute was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Barrentine, 450 U.S. at 739 (internal citations and quotations omitted). To safeguard employee rights made mandatory by statute, a majority of courts have held that *bona fide* FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the

2

Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit.[1]

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval. Absent such guidance, district courts within the Third Circuit have routinely adopted the majority position and have required judicial approval as a precondition to amicable resolution of claims.[2] Courts typically employ the considerations set forth by the Eleventh Circuit in <u>Lynn's Food Stores</u>, 679 F.2d 1350, when evaluating proposed FLSA settlement agreements. <u>See</u>, <u>e.g.</u>, <u>McGee</u>, 2014 WL 2514582; <u>Brown</u>, 2013 WL 5408575; <u>Deitz</u>, 2013 WL 2338496; <u>Altenbach</u>, 2013 WL 74251; <u>Cuttic</u>, 868 F. Supp. 2d 464; <u>Brumley</u>, 2012 WL 1019337; <u>Morales</u>, 2012 WL 870752.

Under <u>Lynn's Food Stores</u>, a proposed compromise may satisfy judicial review if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." 679 F.2d at 1355. When a reviewing court is satisfied that the

---

[1] <u>See</u>, <u>e.g.</u>, <u>Lynn's Food Stores, Inc. v. U.S. *ex rel.* U.S. Dep't of Labor</u>, 679 F.2d 1350, 1354-55 (11th Cir. 1982); <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 206 (2d Cir. 2015); <u>Copeland v. ABB, Inc.</u>, 521 F.3d 1010, 1014 (8th Cir. 2008); <u>O'Connor v. United States</u>, 308 F.3d 1233, 1243-44 (Fed. Cir. 2002); <u>Walton v. United Consumers Club, Inc.</u>, 786 F.2d 303, 305-07 (7th Cir. 1986); <u>Dees v. Hydradry, Inc.</u>, 706 F. Supp. 2d 1227, 1237-38 (M.D. Fla. 2010); <u>but</u> <u>see</u> <u>Martin v. Spring Break '83 Prods., L.L.C.</u>, 688 F.3d 247, 256 (5th Cir. 2012).

[2] <u>See</u>, <u>e.g.</u>, <u>McGee v. Ann's Choice</u>, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014); <u>Brown v. TrueBlue, Inc.</u>, No. 1:10-CV-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013); <u>Deitz v. Budget Renovations & Roofing, Inc.</u>, No. 4:12-CV-718, 2013 WL 2338496 (M.D. Pa. May 29, 2013); <u>Altenbach v. Lube Ctr.</u>, No. 1:08-CV-2178, 2013 WL 74251 (M.D. Pa. Jan. 4, 2013); <u>Cuttic v. Crozer-Chester Med. Ctr.</u>, 868 F. Supp. 2d 464 (E.D. Pa. 2012); <u>Brumley v. Camin Cargo Control, Inc.</u>, No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012); <u>Morales v. PepsiCo, Inc.</u>, No. 11-6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012).

agreement in fact resolves a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the parties' agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. Altenbach, 2013 WL 74251, at *1; see McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *1; Dees, 706 F. Supp. 2d at 1241.

### III. Discussion

The court will consider *seriatim* the terms of the proposed settlement agreement, the nature of the parties' dispute, and the fairness and reasonableness of the compromise as to Beck and as measured against the intent of the FLSA. See Lynn's Food Stores, 679 F.2d at 1355.

#### A. Terms of Proposed Agreement

Under the terms of the proposed settlement agreement, defendants agree to pay $30,000.00 to resolve Beck's claims. (See Doc. 16-1 ¶ 1). Of the total settlement amount, Beck will receive $22,619.10 and her counsel will receive $7,380.90 for attorney's fees and costs. (Id.) In exchange for payment thereunder, the agreement contains the following release provisions:

> 3. Except as set forth in Paragraph 1 of this Agreement, Employee is not entitled to any other payments, compensation, wages, benefits, reimbursements or distributions from any Defendant or any Releasee under this Agreement, under any prior agreement, express or implied, written or unwritten, or otherwise. References in this Agreement to the release of claims by Employee against Defendants and the other Releasees shall be deemed to also include, without limitation, the release of claims against Defendants and the Releasees regarding all contractual payments,

4

compensation, commissions, wages, benefits, back pay, interest, statutory payments and penalties, bonuses, damages, paid time off, overtime, sick pay, severance pay, travel expenses, out-of-pocket reimbursements, any other form of compensation, and attorney's fees and costs arising out of, related to, or derivative from Employee's employment with the Company.

4. Beck on behalf of herself, her heirs, estate, executors, administrators, successors and assigns, irrevocably and unconditionally releases, acquits, and forever discharges Bross and the Company, and each of its present and former owners, shareholders, directors, officers, agents, employees, attorneys, representatives, subsidiaries, divisions, affiliated companies, successors and assigns ("Releasees") and each of them, jointly and severally, of and from any and all manner of claims, suits, demands, debts, dues, accounts, bonds, covenants, contracts, promises, agreements, judgments, liabilities, obligations, rights, costs, expenses, attorneys fees, action or causes o[f] action of whatsoever kind or nature in law or in equity, direct or indirect, whether presently known or unknown, suspected or unsuspected, foreseen or unforeseen, or accrued or not accrued, which Employee, her heirs, estates, executors, administrators, successors or assigns, or any of them, ever had, now have or hereafter can, shall or may have upon or by reason of any event, matter, cause or thing whatsoever, from the beginning of the world to the date of this release against each and any of the Releasees, with respect to, arising out of, or in any way connected with her employment, benefits of employment, and termination by the Company, including all those claims made, or which could have been made, in the aforementioned lawsuit filed by Employee in the United States District Court for the Middle District of Pennsylvania, Civil court, No. 16cv01975.

(Id. ¶¶ 3-4). The agreement contains standard non-disparagement and no admission of liability settlement terms, in addition to a Pennsylvania choice-of-law provision and integration and severability clauses. (Id. ¶¶ 7, 12, 14-15).

5

### B. *Bona Fide* Dispute

The court first addresses the threshold question of whether the parties' agreement resolves a *bona fide* dispute therebetween. Beck avers that defendants willfully violated federal and state law by failing to compensate her for unreported hours worked between May 2013 and July 2016. (See Doc. 1 ¶¶ 6-8, 16). Defendants deny these allegations, (see Doc. 5 ¶¶ 6-8, 16), and raise nine affirmative defenses, (see id. at 6-7). The parties conducted limited discovery prior to exploring the merits of their respective claims and defenses in mediation. (See Docs. 10, 13).

A *bona fide* dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial. See Lynn's Food Stores, 679 F.2d at 1354; Deitz, 2013 WL 2338496, at *3. As this court recently observed, a *bona fide* dispute thus involves factual rather than legal doubt. See Deitz, 2013 WL 2338496, at *3 (citing Lignore v. Hosp. of Univ. of Pa., No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007)). Such doubt is manifest *sub judice*. There are genuine questions as to whether Beck could prove to a jury's satisfaction that she worked the overtime hours alleged and that defendants knew of and willfully disregarded their obligation to compensate her for the hours worked. (See Doc. 1 ¶¶ 6-8; Doc. 5 ¶¶ 6-8). Ostensible legal issues include whether Beck is an exempt employee under the FLSA. The court concludes that the proposed agreement resolves a *bona fide* dispute between the parties.

### C. Fair and Reasonable Settlement

The court next determines whether the settlement agreement proposed by the parties represents a fair and reasonable compromise of Beck's claims. In

undertaking this analysis, district courts within the Third Circuit have considered the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), which established evaluative criteria for measuring the fairness of proposed class action settlements. See, e.g., McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *2; Deitz, 2013 WL 2338496, at *5-8; Altenbach, 2013 WL 74251, at *2; Brumley, 2012 WL 1019337, at *4-5. Girsh directs courts to examine the following nine factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 156-57. Some of the Girsh factors are of "little help, if not irrelevant, in the single-plaintiff context," Howard v. Phila. Housing. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016)); courts need not apply the Girsh factors mechanically. Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 523 n.3 (E.D. Pa. 2016).

Applying the appropriate Girsh factors, the court is satisfied that the parties' agreement reaches a fair and reasonable compromise. The parties participated in limited fact discovery before mediation, offering both sides an appreciation of the merits of the case. Most notably, however, the settlement compensates Beck for a substantial number of the overtime hours allegedly worked per week during the relevant period, representing recovery of more than two-thirds of the unpaid overtime wages sought in Beck's complaint. (See Doc. 1 ¶ 16; Doc. 16-1 ¶¶ 1-2). The

7

court has little difficulty concluding that the settlement represents a fair and reasonable resolution of Beck's claims.

**D.     Furtherance of the FLSA**

The court must also determine whether the proposed settlement furthers or frustrates implementation of the FLSA in the workplace. See McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *1; Dees, 706 F. Supp. 2d at 1241. A principal objective of the FLSA is to combat "inequalities in bargaining power between employers and employees," Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)), and courts must bear this principle in mind when assessing whether a proposed settlement agreement "impermissibly frustrates" the FLSA. Altenbach, 2013 WL 74251, at *1. In making this assessment, courts consider, *inter alia*, the breadth of any release of claims, see, e.g., Bettger v. Crossmark, Inc., No. 1:13-CV-2030, 2015 WL 279754, at *8-10 (M.D. Pa. Jan. 22, 2015) (Conner, C.J.); Dees, 706 F. Supp. 2d at 1243, and the scope of any confidentiality provisions, see, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3. Having carefully considered the terms of the agreement, and given the claims and the factual circumstances presented and framed by the pleadings filed to date, the court finds that the proposed settlement agreement is consonant with the purposes of the FLSA.

8

**IV.     Conclusion**

For all of the foregoing reasons, Beck's motion (Doc. 16) for judicial approval of settlement will be granted, as set forth in the attached order.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     October 20, 2017